IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JESSICA MILBURN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  Case No. 20-00918-CV-W-WBG ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**ORDER AND OPINION REVERSING IN PART AND AFFIRMING IN PART
THE ACTING COMMISSIONER'S FINAL DECISION DENYING BENEFITS
AND REMANDING FOR FURTHER PROCEEDINGS**

Pending is Plaintiff Jessica Milburn's appeal of the Acting Commissioner of Social Security's final decision denying her application for disability insurance benefits. After carefully reviewing the record and the parties' arguments, the Acting Commissioner's decision is **REVERSED IN PART** and **AFFIRMED IN PART,** and the case is **REMANDED** for further proceedings.

## I. BACKGROUND

Plaintiff was born in 1982 and has a limited education.[1] R. at 45, 48, 214. She previously worked as a babysitter, certified nurse's assistant, billing clerk, customer service representative, data entry clerk, mortgage clerk, and kitchen helper. R. at 19, 77-78. In January 2018, Plaintiff applied for disability insurance benefits claiming she became disabled on February 28, 2016. R. at 10, 38, 214-15. Plaintiff's application was denied, and she requested a hearing before an administrative law judge ("ALJ"). R. at 123-27.

---

[1] Plaintiff left school after the eleventh grade but subsequently obtained a General Educational Development ("GED") certificate. R. at 48. She attended some college but never received a college degree. *Id.*

In January 2019, a hearing was held before ALJ Diana Erickson. R. at 35-81. During the hearing, Plaintiff and a vocational expert testified. *Id*. In April 2019, the ALJ sent interrogatories to an impartial medical expert, Peter Schosheim, M.D. R. at 283-94. On June 21, 2019, Plaintiff's counsel was provided access to Dr. Schosheim's interrogatory responses. R. at 296-97. On July 3, 2019, Plaintiff objected to the admission of Dr. Schosheim's responses and requested a supplemental hearing. R. at 299.

In November 2019, ALJ Erickson held a supplemental hearing. R. at 83-113. During the hearing, Arthur Lorber, M.D., an impartial medical expert, testified along with a different vocational expert. *Id*. On February 24, 2020, the ALJ issued her decision, finding Plaintiff is not disabled. R. at 10-27. The ALJ concluded Plaintiff suffers from the following severe impairments: degenerative disc disease of the lumbar spine, status post-laminectomy and debridement, bipolar disorder, depression, panic disorder, and anxiety disorder. R. at 13. She determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following additional limitations:

> The claimant could sit, stand, and/or walk each 30 minutes at a time and then would need to shift position at least briefly, for 2-3 minutes, but could stay on task. The claimant could never climb ladders, ropes, or scaffolds; could not balance, kneel, crouch, or crawl; and could occasionally climb ramps and stairs, and stoop. The claimant could no more than occasionally use foot controls. The claimant could tolerate occasional exposure to temperature extremes and vibration, and should avoid all hazards. The claimant could understand, remember, and carry out instructions for simple, routine, repetitive tasks, and could make simple, work-related decisions. The claimant could tolerate only occasional interaction with the public as part of the job, and frequent interaction with co-workers.

R. at 15. Based upon her review of the record, the RFC, and witness testimony from both hearings, the ALJ concluded Plaintiff could work as a document preparer, circuit board assembler, and packager, and thus, is not disabled. R. at 21. Plaintiff appealed the ALJ's decision to the Social

Security Administration's Appeals Council, which denied her appeal. R. at 1-3, 208-10. She now appeals to this Court. Doc. 3.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the Commissioner's findings, and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). This Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

In evaluating for substantial evidence, a court must consider evidence supporting as well as evidence detracting from the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015). "As long as substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner adopted one of those positions," the court must affirm. *See Anderson*, 696 F.3d at 793.

## III. DISCUSSION

This appeal focuses on whether the mental and physical functional limitations in the ALJ's RFC are supported by substantial evidence. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC on "all the relevant evidence, including the medical records, observations of treating physicians and others, and an

3
Case 4:20-cv-00918-WBG   Document 24   Filed 03/31/22   Page 3 of 11

individual's own description of his limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) and *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id*.

A. **Mental Functional Limitations**

Plaintiff argues this matter should be reversed and remanded because the mental limitations in the ALJ's RFC are unsupported by the medical evidence in the record. Doc. 15 at 33-41. The ALJ found Plaintiff is capable of understanding, remembering, and carrying out instructions for simple, routine, and repetitive tasks. R. at 15, 17. In support of this finding, the ALJ pointed to Plaintiff's January 2015 psychiatric appointment with J.S. Gosal, M.D. R. at 17 (citing 6F/43 (R. at 687)). At that appointment, Plaintiff presented with normal thought content, perception, flow of thought, and speech; intact memory; and good insight and judgment. R. at 687. There were no specific findings from this appointment regarding Plaintiff's ability to understand, remember, or carry out instructions. *Id*.

The ALJ's RFC also found Plaintiff can make simple, work-related decisions. R. at 15, 17. In support, the ALJ observed Plaintiff was able to babysit,[2] meaning "she was self-employed," and, thus, could make simple, work-related decisions. R. at 17. The ALJ also cited records from 2016 in which Plaintiff presented with normal judgment, insight, and speech. R. at 17 (citing 1F/6, 97 (R. at 313, 404), 9F/37 (R. at 860)). There were no specific findings from these visits pertaining to Plaintiff's ability to make simple, work-related decisions. R. at 313, 404, 860.

---

[2] There is no evidence in the record that Plaintiff engaged in babysitting after the alleged onset date.

The ALJ found Plaintiff capable of tolerating only occasional interaction with the public but could frequently interact with co-workers. R. at 15, 17. In support, the ALJ stated Plaintiff was "cooperative with her examinations." R. at 14, 17 (citing 1F/187 (R. at 494) and 9F/37 (R. at 860)).[3] However, the records cited by the ALJ do not indicate Plaintiff is capable of tolerating occasional interactions with the public and frequent interactions with co-workers. And the ALJ does not explain how Plaintiff's cooperation with her examination supports a finding of said limitation.

The Acting Commissioner does not cite, and the Court has been unable to locate, anything in the record establishing – or even suggesting – support for Plaintiff's mental functioning limitations in the ALJ's RFC. Instead, and contrary to the ALJ's finding, the record is almost entirely silent as to Plaintiff's specific mental functioning abilities. In fact, Dr. Steven Akeson, a non-examining state agency physician, found there to be "insufficient evidence" to assess Plaintiff's mental residual function capacity. R. at 119.

"[T]he ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden. . . . . " *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)); *see also Grindley v. Kijakazi*, 9 F.4th 622, 629-30 (8th Cir. 2021) (finding an ALJ has an independent duty to develop the record but "is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped."). If the record "does not contain all the information" needed to determine whether a claimant is disabled, the ALJ may recontact a medical source, request additional existing evidence, order a consultative examination, or ask the claimant or others for more information. 20

---

[3] In the records cited by the ALJ, there is no indication that Plaintiff was "cooperative" with examinations. But the Court notes the record includes instances where Plaintiff was "cooperative" during multiple examinations after her alleged disability onset date. *See* R. at 494, 505, 757, 940, 945, 1122, 1288, 1540, 1704, 1730, 2221, 2240, 2261.

C.F.R. § 404.1520b(b)(2); *see also* 20 C.F.R. § 404.1545(a)(3) (providing that before the ALJ makes a determination that a person is not disabled, the ALJ is responsible for developing the claimant's complete medical history, including arranging for a consultative examination, if necessary). "It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for [her] to make an informed decision." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992) (citations omitted).

Here, the record does not provide sufficient evidence to determine Plaintiff's mental limitation or whether she is mentally disabled.[4] Thus, upon remand, the ALJ is ordered to obtain a consultative examination to determine the extent of Plaintiff's mental limitations. Upon receipt of the consultative examination, the ALJ must re-evaluate Plaintiff's mental limitations and reformulate the RFC.

**B.    Physical Functional Limitations**

Plaintiff argues this matter should be reversed and remanded because the ALJ rejected her allegations of disability "based on the fact Plaintiff was drug-seeking, had successful surgery, and full range of motion after her surgery." Doc. 15 at 45. Despite Plaintiff's claims to the contrary, the ALJ properly accounted for Plaintiff's physical limitations in her RFC.

**(1)    Medical Evidence and Opinions in the Record**

In October 2015, Plaintiff had an MRI scan showing mild degenerative disc disease, moderate narrowing of the bony canal, a left-sided herniated disc, and a protruding disc in her lower back. R. at 447. She was prescribed Percocet. R. at 133. In November 2015, Plaintiff

---

[4] Although not briefed by either party, the failure to fully develop the record in this case could constitute legal error that is owed no deference by a reviewing court. "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). An ALJ "may not silently disregard" duly promulgated regulations by the Social Security Administration. *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003). A failure to follow applicable regulations constitutes legal error. *Id*. at 695. No deference is owed to the ALJ's legal conclusions. *Id*. at 692.

underwent spinal decompression surgery, and approximately six weeks later, the surgical site was debrided due to an infection. R. at 449-50, 468, 536.

From February 2016 through August 2019, Plaintiff visited the emergency department for myriad reasons including, but not limited to, back pain, falling, numbness in her extremities, urinary incontinence, and abdominal pain. *See*, *e.g.*, R. at 492-98, 502-07, 709-11, 724-29, 748-53, 790-97, 803-13, 832-38, 858-62, 1288-90, 1302-05, 1308-10, 1350-59, 1369-72, 1374-79, 1384-89, 1393-98, 1412-28, 1433-42, 1447-52, 1452-62, 1473-79, 1480-86, 1494-98, 1511-20, 1523-25, 1702-08, 1714-21, 1728-32, 2142-51, 2177-82, 2155-60, 2163-72, 2219-26, 2237-47, 2259-65. These total no fewer than thirty-five visits to the emergency department after the alleged onset date. *See id*.

At times, treating physicians found Plaintiff was "drug seeking" and advised her that they would not be refilling her narcotics prescriptions. R. at 860, 1304, 1322-23, 1769, 1825, 1898. Additionally, physicians often found Plaintiff's complaints to be "exacerbated" and "not supported by objective findings." R. at 482, 486, 497, 725, 832, 1393, 1397-98, 1480, 1482, 1488, 1755, 1765, 1774, 1779-80, 1792-93, 1825, 1893.

But after her decompression surgery in November 2015, Plaintiff's examinations were largely unremarkable. For example, on March 7, 2016, Plaintiff reported to Cass Regional Medical Center ("Cass Regional") for low back pain, incontinence, and fever. R. at 1308-09. She was transferred to Research Medical Center where again she presented with lower back tenderness, and positive radiculopathy signs in both legs. R. at 1813-14. On re-evaluation, Plaintiff reported her pain as a ten on a ten-point scale, but did not present with any acute distress. R. at 1790. An examination by a pain management specialist was unremarkable. R. at 1793.

One week later, on March 14, 2016, Plaintiff presented to Cass Regional again for low back pain where she was noted as both "tearful" but in "no distress." R. at 1302-04. All other

findings were normal on examination. *Id.* Less than a week later, Plaintiff sought emergency care for low back pain but her back was "normal" on inspection with "full range of motion." R. at 492, 494.

On April 9, 2016, Plaintiff again reported to an emergency department for low back pain. R. at 748. On initial examination, she presented with decreased range of motion and tenderness and was admitted at her request. R. at 750. During her third examination, Plaintiff had no abnormal medical signs related to her back impairment, and radiographic imaging showed "[m]inimal multilevel degenerative disc disease." R. at 764. Prior to discharge, an MRI of Plaintiff's lumbar spine was conducted without acute findings. R. at 752, 795-98. Specifically, the MRI revealed "[r]ight greater than left enhancement of the S1 nerves" likely due to "subtle arachnoiditis" and "[m]ild lower lumber spondylosis." R. at 797.

Less than a week later, Plaintiff returned to the emergency department with low back pain. R. at 790. On examination, Plaintiff demonstrated low back pain and was observed as being in "mild acute distress." R. at 792, 794-95. However, the emergency department noted Plaintiff "ha[d] pain beyond what [the doctor] can account for on imaging" and her request to be admitted was denied. R. at 789, 795. The next day, Plaintiff again sought care for low back pain where she was described as anxious and tearful but in no distress. R. at 805. A magnetic resonance imaging scan showed "mild" low back spinal arthritis and expected post-surgical changes. R. at 506, 805, 812-13.

At the second administrative hearing on November 26, 2019, Arthur Lorber, M.D., an impartial medical expert testified. R. at 83-100. He testified that during 2016, Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. R. at 90-91. Dr. Lorber noted that the April 11, 2016 MRI of Plaintiff's lumbar spine did not identify any stenosis or clumping of the nerve root. R. at 90. According to Dr. Lorber, clumping of the

8
Case 4:20-cv-00918-WBG   Document 24   Filed 03/31/22   Page 8 of 11

nerve root is a "cardinal sign" of arachnoiditis, and without it, the MRI indicated Plaintiff did not have arachnoiditis. *Id*. He opined the finding of subtle arachnoiditis on Plaintiff's MRI was "somewhat inflated." *Id*. According to Dr. Lorber, Plaintiff did not meet listing 1.04(a) or (c) because "the clinical examination did not demonstrate evidence of focal neurologic deficits subsequent to the surgical procedure that was . . . performed." R. at 91. However, he opined Plaintiff has a severe impairment in her lumbar spine reducing her to a limited range of sedentary work activities. *Id*.; *see also* R. at 94.

### (2) The ALJ's Consideration of the Evidence

The ALJ considered the evidence and opinions in this matter, and properly accounted for Plaintiff's physical limitations when formulating her RFC. In support of her RFC, the ALJ cited medical records where Plaintiff's disc protrusion had "reduced in size since November 2015," "January 2016 imaging of [Plaintiff's] lumbar spine showed no evidence of acute abnormality," and "[Plaintiff's] range of motion was later full." R. at 16 (citing 1F/167 (R. at 474), 1F/183 (R. at 490), 1F/175 (R. at 482)). Accordingly, the ALJ noted Plaintiff's debridement surgery in November 2016 "was considered successful." R. at 16. Thus, Plaintiff's range of motion supports the postural limitations of the RFC. *Id*.

Based on the evidence in the record, the ALJ also observed Plaintiff should be able to shift positions but can stay on task when doing so. *Id*. The ALJ cited Plaintiff's November 2015 examinations which revealed normal range of motion and strength and a diagnosis of lumbar disc degeneration due to protrusion. *Id*. (citing 1F/140 (R. at 447), 142 (R. at 449), 15 (R. at 322), and 3F/26 (R. at 540)). And Plaintiff's degenerative disc disease was considered by the ALJ when limiting her to sedentary work. R. at 16.

The ALJ also considered Plaintiff's drug-seeking behavior and activities of daily living when evaluating her credibility regarding her symptoms. R. at 16-17. Specifically, the ALJ found

9

the medical evidence established Plaintiff's poor effort and occasionally exaggerated responses did not support her allegations and the objective medical findings showed her ability to ambulate and to have better range of motion than she reported. R. at 17 (citing 7F/28 (R. at 725) and 9F/37 (R. at 860)). The ALJ also referenced Plaintiff's testimony that she did limited housework – including laundry – and cared for her children. R. at 17. The ALJ found these activities of daily living to be consistent with the sedentary exertional level. R. at 17-18.

The ALJ determined the opinion of Dr. Lorber to be "persuasive regarding [Plaintiff's] physical impairments." R. at 18. She noted Dr. Lorber supported his opinion with "detailed references to the medical record" and said opinion is "consistent with [Plaintiff's] surgical procedures, and her activities of daily living through the date last insured." *Id*. Despite Plaintiff's claims to the contrary, there is no conflict between the opinion of Dr. Lorber as to Plaintiff's physical limitations and the ALJ's RFC. Dr. Lorber opined Plaintiff could sit, stand, or walk for thirty minutes a time before changing positions, but it would not be necessary for Plaintiff to take a break from work when changing position. R. at 94. This opinion is accounted for in the RFC. R. at 15.

Plaintiff argues the MRI scan established she had spinal arachnoiditis and Dr. Lorber erred by failing to consider this when forming his opinion. Doc. 15 at 45. Contrary to Plaintiff's argument, Dr. Lorber considered the possible finding of arachnoiditis and opined his review of the MRI does not reveal the same diagnosis. R. at 90. In fact, he labeled that finding as "somewhat inflated." *Id*. To the extent medical sources have suggested Plaintiff may have spinal arachnoiditis, this constitutes a conflict within the evidence, and it is the role of the ALJ to resolve said conflicts. *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (noting the ALJ considered both a MRI and medical opinions and appropriately placed different but permissible weight on these matters).

The ALJ accounted for Plaintiff's physical impairments in the RFC. She limited Plaintiff to sedentary work. R. at 15. She also limited Plaintiff to sitting, standing, and/or walking each 30 minutes at a time and then shifting position at least briefly, for 2-3 minutes, but staying on task. *Id*. The ALJ also found Plaintiff could never climb ladders, ropes, or scaffolds; never balance, kneel, crouch, or crawl; and occasionally climb ramps and stairs and stoop. *Id*. As set forth *supra*, the records provided sufficient information for the ALJ to determine Plaintiff's physical limitations. The Court finds the RFC fully accounted for Plaintiff's physical impairments, and in this regard, the Court **AFFIRMS** the Commissioner's final decision denying benefits.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the substantial evidence in the record as a whole does not support the ALJ's decision related to Plaintiff's mental limitations, and in this regard, the Commissioner's decision is **REVERSED IN PART** and **REMANDED** for further proceedings consistent with this opinion. In addition, the Court finds the physical limitations as set forth in the ALJ's RFC is supported by substantial evidence, and in this regard, the Commissioner's decision is **AFFIRMED IN PART**.

**IT IS SO ORDERED.**

DATE: March 31, 2022  /s/ W. Brian Gaddy
W. BRIAN GADDY
UNITED STATES MAGISTRATE JUDGE